FILED & JUDGMENT ENTERED
Steven T. Salata

Aug  21  2015

Clerk, U.S. Bankruptcy Court
Western District of North Carolina

_____
J. Craig Whitley
United States Bankruptcy Judge

# UNITED STATES BANKRUPTCY COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
### CHARLOTTE DIVISION

| | | |
|---|---|---|
| In Re: | ) | |
| | ) | |
| **Greg D. Robbins and** | ) | |
| **Kimberly M. Robbins** | ) | |
| | ) | |
| | ) | **Case No. 10-32460** |
| | ) | **Chapter 7** |
| Debtor. | ) | |
| | ) | |
| **Larry M. Stiles,** *Trustee for the* | ) | |
| ***Bankruptcy Estate of*** | ) | |
| ***Greg D. Robbins and*** | ) | |
| ***Kimberly M. Robbins*** | ) | |
| | ) | |
| **Plaintiff,** | ) | **Adversary Proceeding** |
| | ) | **No. 12-03205** |
| v. | ) | |
| | ) | |
| **Greg D. Robbins,** *Individually* | ) | |
| *and as Executor and  Administrator* | ) | |
| *of the Estate of Bobby Dean* | ) | |
| *Robbins,* **Kimberly M. Robbins,** | ) | |
| **Brenda R. Frucht, Roxie A.** | ) | |
| **Lunsford, Bart S. Lunsford,** | ) | |
| **Estate of Bobby Dean Robbins,** | ) | |
| **and Robbins Construction** | ) | |
| **Company, Inc.** | ) | |
| | ) | |
| **Defendants.** | ) | |

## ORDER GRANTING PARTIAL SUMMARY JUDGMENT
## AND CONDITIONALLY GRANTING PARTIAL SUMMARY JUDGMENT TO
## DEFENDANTS ROXIE AND BART LUNSFORD

**THIS MATTER** is before this Court on a motion for Summary Judgment filed on April 13, 2015 by Defendants Roxie and Bart Lunsford (the Lunsfords). A hearing was held on May 14, 2015. Michelle E. Earp and Ross R. Fulton appeared on behalf of the Lunsfords. John Taylor appeared on behalf of the Plaintiff/Chapter 7 Trustee, Larry M. Stiles (the Trustee) in opposition.

Among other relief sought in this action, the Trustee seeks to avoid a prepetition $202,363.84 transfer of the male debtor's property under Bankruptcy Code Section 548 and N.C.G.S. § 39-23 and to recover that transfer from the Lunsfords under Code Section 550.

### STATEMENT OF UNDISPUTED FACTS

1.      Bobby Dean Robbins died on November 11, 2011 leaving a son, Greg D. Robbins, and a daughter, Brenda Frucht, from his former marriage. Bobby Dean was also succeeded by Bart Lunsford, a son by his longtime girlfriend, Roxie Lunsford.

2.      Bobby Dean's will contained a $50,000 cash bequest to Roxie and another $50,000 bequest to Bart. After other specified bequests, the balance of Bobby Dean's Decedent's Estate was left to Greg and Brenda, in equal shares.

3.      Bobby Dean's will was probated in Davidson County, North Carolina. Greg was appointed executor (or administrator) of the Decedent's Estate. In December 2008, Greg opened a bank account for the Decedent's Estate at Bank of America (the Decedent's Estate Account) into which he deposited its assets and from which he paid its debts.

2

4.       At the time of his death, Bobby Dean was the 100% owner of Robbins Construction Co., LLC. After Bobby Dean's death, Greg took over day-to-day management of Robbins Construction.  On January 1, 2009, Greg caused the Decedent's Estate to distribute one half of the shares of Robbins Construction to himself and one half to Brenda.

5.       Greg holds a master's degree in accounting and is a Certified Public Accountant.

6.       To track the monies into and expenditures paid out of the Decedent's Estate Account, Greg kept an accounting ledger (Amended Complaint, Exhibit J).  The ledger details each account deposit and withdrawal, including checks with name, date, and amount.  Greg's ledger also has two columns, one under his name and the other under Brenda's in which he allocated each deposit and withdrawal between himself and his sister.

7.       On May 13, 2009, Greg deposited a $202,363.84 check drawn on his personal bank account at Wachovia Bank, check no. 1167, into the Decedent's Estate Account.

8.       The purpose behind the $202,363.84 transfer is in dispute. The Trustee maintains that Greg was in financial trouble and hid his money from his creditors by sheltering it in the Decedent's Estate.  The Lunsfords argue that the $202,363.84 transfer was a repayment of a debt owed by Greg to Robbins Construction.

9.       In Greg's ledger, many of the deposits and withdrawals are apportioned equally between Greg and Brenda.  By contrast, the $202,363.84 transfer is listed as Greg's money and is not divided.

3

10.     The same day that he deposited his money into the Decedent's Estate, Greg wrote two checks from the Decedent's Estate Account: one to Roxie for $25,000.00 and another to Bart for $28,359.50 (the 2009 Distributions).[1]

11.     Afterward, in addition to using the Decedent's Estate Account to pay bequests and other estate bills, Greg took numerous cash withdrawals from the account. These varied in amount from $861.65 to $27,250.  By January 28, 2011, Greg had withdrawn $155,381.31 from the Decedent's Estate Account in this fashion.

12.     Meanwhile, on March 9, 2010, Robbins Construction wrote two checks to the Lunsfords in partial payment of Bobby Dean's bequests: one to Roxie of $25,000.00 and another to Bart of $24,328.61 (the 2010 Distributions).[2]

13.     On August 2, 2010, Greg filed a Final Account in the decedent's estate proceeding.  That Final Account identified the following distributions to beneficiaries of Bobby Dean's estate:

| Date | Distributed to | | Amount |
|------|----------------|---|--------|
| 5/27/09 | Bart Lansford [sic] | | $28,359.50 |
| 5/26/09 | Roxie Lansford [sic] | | $25,000.00 |
| 5/27/09 | Roxie Lansford [sic] | Jet Skis | $ 6,000.00 |
| 5/27/09 | Roxie Lansford [sic] | Lawnmower | $    974.00 |
| 3/9/10 | Roxie Lansford [sic] | | $25,000.00 |
| 3/9/10 | Bart Lansford [sic] | | $24,328.61 |
| 1/1/09 | Greg Robbins | 500 Shares, | |

[1] The evidence presented in conjunction with the motion does not indicate how much money was in the Decedent's Estate Account prior to these transactions.

[2] Under Bobby Dean's will, these bequests could be paid out of Robbins Construction.

|  |  | Robbins Constr. | $277,399.50 |
| 1/1/09 | Brenda Frucht | 500 Shares, | |
|  |  | Robbins Constr. | $277,399.50 |
| 4/15/09 | Brenda Frucht | | $ 9,373.96 |
| 4/15/09 | Greg Robbins | | $ 9,373.97 |

14.     The Final Account is inaccurate in at least three respects. First, the $202,363.84 transfer and the cash withdrawals from the Decedent's Estate Account are omitted from the Final Account.  Second, Greg represents that the Decedent's Estate Account has an ending $0 balance.  However, on August 2, 2012, that bank account still contained $10,155.36.[3]  Third, the Final Report indicates that the Lunsfords received two sets of cash bequests from the Decedent's Estate.  However, only one set was actually paid by the Decedent's Estate.  The 2010 Distributions were paid by Robbins Construction from its bank account.

15.     On August 24, 2010, Greg and Kimberly filed their voluntary Chapter 7 bankruptcy case.  The Debtors' bankruptcy schedules fail to mention these, and other, financial transactions.  Of relevance to the current motion, the Debtors did not disclose Greg's status as a beneficiary of the Decedent's Estate, his transfer of $202,363.84, his withdrawals from the Decedent's Estate Account, or his half ownership in Robbins Construction.

16.     The Lunsfords do not have a social or personal relationship with Greg. Roxie spoke with Greg only about matters pertaining to the Lunsfords' interests in the Decedent's Estate.

---

[3] The Trustee maintains that the balance in the Bank of America Account was Greg's property and thus  property of the bankruptcy estate.

## STATEMENT OF POSITIONS

The Trustee's Amended Complaint asserts that the $202,363.84 transfer was a fraudulent conveyance under Section 548 and its North Carolina law analog, N.C.G.S. § 39-23.  His Amended Complaint further alleges that by virtue of the distributions they received from the Decedent's Estate, the Lunsfords are subsequent transferees of Greg's funds and these payments are recoverable from them under Code Section 550.

The Lunsfords dispute both the Trustee's ability to avoid the $202,363.84 transfer and his ability to recover their specific bequests.  They make four arguments in favor of their motion.

First, the Lunsfords point out that the 2010 Distributions were paid by Robbins Construction and not the Decedent's Estate.  These monies did not derive from Greg's property and are not avoidable.  At the hearing, the Trustee acceded to the Lunsfords contention.

Second, the Lunsfords argue that the $202,363.84 transfer repaid an obligation owed by Greg to Robbins Construction.  According to the Lunsfords, this transfer was not, by definition, a fraudulent conveyance.

Third, even if the $202,363.84 transfer could be avoided, the Lunsfords maintain that they are subsequent transferees who took for value, in good faith, and without knowledge of the voidability of the transfer.  Thus, the Lunsfords would be shielded by Code Section 550(b).

Finally, in a post hearing brief, the Lunsfords argue that the Trustee's state law avoidance claims are time barred by N.C.G.S. § 28A-19-3(b)(2).

## HOLDING

The 2010 Distributions were funded by a third party, did not derive from property of the debtor, and are not avoidable. **SUMMARY JUDGMENT IS GRANTED** in favor of the Lunsfords as to the 2010 Distributions.  On the present pleadings, the Lunsfords are Subsequent transferees with a Section 550(b) defense. **PARTIAL SUMMARY JUDGMENT IS THEREFORE CONDITIONALLY GRANTED** in favor of the Lunsfords as to the 2009 Distributions, provided that the Trustee does not elect to further amend his complaint.

## DISCUSSION

Under Bankruptcy Rule 7056, the counterpart to Federal Rule of Civil Procedure 56(c), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." *See also Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986).

Summary judgment should be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id*.  The movant bears the initial burden to inform the court of the basis for its motion and to demonstrate the absence of a genuine issue of material fact. *Id*. at 322-23.

When weighing whether summary judgment is appropriate, all factual reasonable inferences must be drawn in favor of the nonmoving party. *Rossignol v. Voorhaar*, 316 F.3d 516, 523 (4th Cir. 2003).  "Where the party challenging the grant of summary judgment can show that the inferences they suggest are reasonable in light of the competing inferences, summary judgment must be denied." *Columbia Union Coll. v. Clarke*, 159 F.3d 151, 164 (4th Cir. 1998) (quotation marks and citations omitted).

**I. Whether the $202,363.84 transfer served to repay an antecedent debt owed by Greg to Robbins Construction is a disputed question of fact.**

The Lunsfords maintain that the $202,363.84 transfer repaid a loan owed by Greg to Robbins Construction. A loan is an antecedent debt. By definition, a transfer which pays an antecedent debt is not a fraudulent conveyance. *See* 11 U.S.C. 548(d)(2)(A); N.C.G.S. § 39-23.3.[4]

To support their contention, the Lunsfords point to Greg's Rule 2004 examination testimony wherein he stated that "the loan was paid and then repaid by me, by giving that [202,000] back." *See* Affidavit of Michelle Earp. They also point to the check register of a Robbins Construction account describing four checks between 2007 and 2008 written for $50,000.00 each. Each handwritten entry bears the word "Greg."[5] The word "LOAN" was written above Greg's name. Finally, the Lunsfords reference Robbins Construction's 2007 and 2008 tax returns and assert that under these returns these payments are treated as loans. After roughly estimating interest, the Lunsfords suggest that Greg owed about $202,363.84 to Robbins Construction, which he repaid by the $202,363.84 transfer.

The proffered documentary evidence fails to support the Lunsfords' theory; it is both incomplete and ambiguous. There are no cancelled checks to show the funds were advanced. The check register is a handwritten document lacking any details to describe the alleged loan or its purpose. Assuming the checks were written, there are no other documents to evidence a loan as opposed to a gift. As Greg admits, there are no notes or

---

[4] Such transfers might be a preference, but this one occurred far outside the applicable reachback period. *See* 11 U.S.C. § 547(b)(4).

[5] The checks were not provided.

8

documents establishing basic loan terms, such as a promise to repay, Greg's signature, interest rates, or due dates. The tax returns are likewise of little help to the Lunsfords as they make no such statement that the payments represented funds loaned to Greg.

Furthermore, if this was a funded loan to Greg, the current record does not establish that it was repaid by the $202,363.84 transfer. That transfer was accomplished by Greg depositing his money into the Decedent's Estate Account. How then was Robbins Construction repaid?[6] Robbins Construction received nothing from the Decedent's Estate.

The record also does not suggest that the $202,363.84 transfer was indirectly paid to Robbins Construction via the other shareholder, Brenda. If the transfer indirectly repaid Robbins Construction, one would expect Brenda to have received a fifty percent credit for the deposit and the withdrawals. She did not. In his ledger, Greg allocates the entire deposit to himself. After making this deposit, Greg disposes of the bulk of these monies through a series of cash withdrawals. According to his ledger,[7] between May 13, 2009 and January 28, 2011, Greg withdrew $155,381.31 from the Decedent's Estate Account. Greg's use of these monies is inconsistent with the Lunsfords' current argument.

As to Greg's testimony that this was a loan repayment, the short answer is that Greg's prior testimony in this case has been proven to be unreliable. Here, it is both self serving and contradictory to his actions.

---

[6] On this record, Robbins Construction never received any distribution from the Decedent's Estate.

[7] The evidence presented in conjunction with summary judgment does not include the bank statements for the Decedent's Estate Account. The numbers discussed are based upon Greg's account ledger.

On this record, the Lunsfords' assertion appears, at best, to be a disputed question of fact in that it is not clear that Greg owed a loan to Robbins Construction and it is even less clear that the $202,363.84 transfer repaid that alleged debt.

**II. The undisputed facts reflect that the Lunsfords took for value in good faith, without knowledge of their alleged voidability such that they are protected by Section 550(b).**

Once a transfer has been avoided, a trustee may recover it or value from "the initial transferee" or "any immediate or mediate transferee." 11 U.S.C. § 550(a); *see also In re Nieves*, 648 F.3d 232, 237 (4th Cir. 2011).

"The term 'initial transferee' is not defined in the Bankruptcy Code." *Bowers v. Atlanta Motor Speedway, Inc. (In re Se. Hotel Props Ltd. P'ship)*, 99 F.3d 151, 154 (4th Cir. 1996). Yet, as explained by controlling Circuit precedent, "a party cannot be an initial transferee if he is a 'mere conduit' for the party who had a direct business relationship with the debtor." *Id*. at 155 (quoting *Lowry v. Sec. Pac. Bus. Credit, Inc. (In re Columbia Data Prods.)*, 892 F.2d 26, 28 (4th Cir. 1989)). Put differently, "the term transferee as used in § 550 must mean something different from possessor or holder or agent." *Id*. at 156 (citations and quotation marks omitted); *see also Bonded Fin. Servs., Inc. v. European Am. Bank*, 838 F.2d 890, 893 (7th Cir. 1988) ("When A gives a check to B as agent for C, then C is the 'initial transferee'; the agent may be disregarded."). Instead, "to constitute the 'initial transferee' of property under § 550(a) of the Bankruptcy Code, a person or entity must have exercised legal dominion and control over the property." *Bowers*, 99 F.3d at 156. An initial transferee is the first party with "the right to put the money to one's own purposes." *Bonded*, 838 F.2d at 893.

The distinction between being an initial versus a subsequent transferee is crucial to a successful defense of a Section 550 recovery action. The trustee has an absolute right to recover from an initial transferee of a debtor's property. 11 U.S.C. § 550(a)(1). However, an immediate or mediate transferee, who took for value, in good faith, and without knowledge of the voidability of the transfer avoided is shielded from recovery. *Id*. at § 550(b). A defendant claiming the § 550(b) defense bears the burden of proof. *Nieves*, 648 F.3d at 237 (citation omitted).

We will temporarily put aside the question of whether the Lunsfords were subsequent versus initial transferees to resolve the far simpler matter of whether they meet the Section 550(b) requirements of "taking for value, in good faith, and without knowledge of the voidability of the transfer." On this record, they do.

A transferee takes for value when he takes in "satisfaction or securing of a present or antecedent debt." 11 U.S.C. § 550(b)(1). The Code defines a "debt" as a "liability on a claim." 11 U.S.C. § 101(12). A "claim," in turn, means "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured." 11 U.S.C. § 101(5)(A).

The specific bequests to the Lunsfords in Bobby Dean's will created a "right to payment" from the Decedent's Estate. *See* N.C.G.S. § 28A-22-1 ("After the payment of costs of administration, taxes and other valid claims against the decedent's estate, the personal representative shall distribute the remaining assets of the estate in accordance with the terms of decedent's valid probated will . . . ."). Thus, a "present or antecedent

debt" was owed to the Lunsfords by the Decedent's Estate that was satisfied by the 2009 Distributions. They "took for value."

Similarly, the undisputed facts show that the Lunsfords acted in good faith and without knowledge of the transfer's potential avoidability. "Good faith," is founded on what the transferee "knew or should have known" about the debtor's financial condition. *Nieves*, 648 F.3d at 238. A transferee lacks good faith when "he has sufficient [actual] knowledge to place him on inquiry notice of the debtor's possible insolvency." *Id*. (alteration in original; citations and quotation marks omitted). The actual notice standard does not require actual knowledge of the transfer's voidability. *Id*. "Instead, actual knowledge of facts that would lead a reasonable person to believe that the transferred property was voidable is all that is required to show knowledge." *Id*. In short, it is an objective standard. *Id*. at 239.

The Lunsfords are Bobby Dean's second family. They were not close to the Debtors and had no contact with the Debtors except as to matters pertaining to the Decedent's Estate. The Lunsfords were not aware of the Debtors' financial problems. They were not involved in administering the Decedent's Estate.

The Trustee does not disagree. Rather, he attacks Greg's conduct and veracity. The Trustee's Response is a diatribe concerning the fraudulent actions that Greg has undertaken in regard to his assets and this case. It recites a litany of Greg's misdeeds: omissions in his bankruptcy schedules, false testimony at his creditor's meeting, improper transfers of assets both before and after bankruptcy, and efforts to conceal the same. Some of these assertions are indisputable, and others may prove to be true in this

12

action.  However, the Trustee has failed to tie the Lunsfords to any of these matters.[8]  In

fact, in his fifty paragraph response to the Lunsfords' motion, the Trustee fails to make

any mention of them beyond paragraph five wherein he merely notes they were

beneficiaries under Bobby Dean's will.

The record only shows that the Lunsfords were related to Greg by marriage and

that they received the 2009 Distributions from the Decedent's Estate.  These facts are

insufficient to create a genuine issue of material fact.

In conclusion, the Lunsfords have demonstrated that they took the 2009

Distributions for value, in good faith, and without knowledge of the voidability of the

transfer within the meaning of Section 550(b).  The only question is whether this defense

is applicable to their situation.

**III. Based on the Trustee's pleadings, it appears that the Lunsfords were subsequent, and not initial, transferees.**

Until the summary judgment hearing, it was understood by all involved that the

Trustee was proceeding against the Lunsfords as if they are subsequent transferees.  The

Trustee pled as much, alleging specifically that "Ms. Lunsford and Mr. Lunsford are

immediate or mediate transferees of the initial transferee" while claiming "[t]he Estate is

the initial transferee."  Amended Complaint, doc. 29 at ¶¶ 133, 134.

However, when faced with the Lunsfords' otherwise valid Section 550(b)

arguments, the Trustee reversed course.  At the summary judgment hearing, he suggested

that the Lunsfords might be "initial" transferees of the 2009 Distributions.  When the

Lunsfords pointed out that the Amended Complaint said otherwise, Trustee's counsel

---

[8] The Trustee filed Greg's 200 page deposition transcript in support of his motion, but
provided no  illumination of where and how this testimony demonstrated the Lunsfords
alleged involvement in Greg's misdeeds.

argued that his pled averments were legal conclusions that could not be construed against him.

Whether the Trustee is entitled to reverse course this late in the game, well after the conclusion of discovery, is a surprisingly complex question. At first blush, it would appear that he may not. To discourage sharp tactics such as trial by ambush, parties are not permitted to try unpled claims. *Pinkley, Inc. v. City of Frederick*, 191 F.3d 394, 401-02 (4th Cir. 1999); *Elmore v. Corcoran*, 913 F.2d 170, 173 (4th Cir. 1990). The unpled claims prohibition prevents the obvious injustice of requiring a party "to defend against a claim for which it was unprepared." *Quillen v. Int'l Playtex, Inc.*, 789 F.2d 1041, 1044 (4th Cir. 1986). Having made no attempt to amend his complaint or to otherwise notify the Lunsfords he intended to pursue them as initial transferees, it would seem that the Trustee's change comes too late to salvage his action now that the discovery period has ended.[9]

Yet, the Trustee's change is more akin to a change in the theory of his case rather than a wholly new claim. Unlike claims, significant case law exists that makes clear that plaintiffs are not required to set forth or stand by a specific legal *theory* in their complaint. *See Johnson v. City of Shelby*, 135 S.Ct. 346, 347 (2014) ("Federal pleading rules call for a short and plain statement of the claim showing that the pleader is entitled to relief; they do not countenance dismissal of a complaint for imperfect statement of the legal theory supporting the claim asserted." (citations and quotation marks omitted)). Courts consistently hold that "a plaintiff should not be prevented from pursuing a valid

---

[9] He would be able to pursue it against the pled initial transferee, the Decedent's Estate. In fact, since the Decedent's Estate has not filed an answer, the Trustee need only move to default it.

claim just because she did not set forth in the complaint a theory on which she could recover . . . ." *Evans v. McDonald's Corp.*, 936 F.2d 1087, 1090 (10th Cir. 1991).

That flexibility must, however, be balanced with notions of fairness and notice to the opposing side. *Vidimos, Inc. v. Laser Lab Ltd.*, 99 F.3d 217, 222 (7th Cir. 1996) ("Which is not to say that such an alteration is always permissible. If the complaint explicitly or implicitly disclaims certain legal characterizations of the claim, an effort to retract the disclaimer may come as a surprise to the defendant and make it more costly or difficult for him to defend, or may simply protract the lawsuit inexcusably."). Shifting theories will be permitted so long as it will " 'not prejudice the other party in maintaining his defense upon the merits.' " *Evans*, 936 F.2d at 1091 (citations omitted). "[I]n the vast majority of cases, any temporary prejudice that might be caused by a shift in legal theory can be overcome by permitting additional time for discovery or by granting a continuance if the case has reached trial." 5 CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 1219 (3d ed. 2015).

The Fourth Circuit clarified its position on changing legal theories in the context of bankruptcy avoidance actions in a recent decision, *In re Railworks Corp.*, 760 F.3d 398 (4th Cir. 2014). In that case, the debtor paid insurance premiums before bankruptcy to its policy underwriter and for the benefit of its insurer. *Id*. at 401. The underwriter collected the premiums, deducted its commissions and forwarded the net payment to the insurer. *Id*. By agreement, the underwriter held these premiums in trust for the insurer and was unconditionally liable as a guarantor to the insurer for their payment. *Id*.

The trustee filed suit against the underwriter under Subsection 547(b)(1) to avoid the premium payments as preferences. *Id*. The complaint alleged the transfers were

made "to or for the benefit of the" underwriter. *Guttman v. Construction Program Group, Inc.*, No. 03-05363, doc. 1, ¶ 14 (Bankr. D. Md. September 16, 2003). The complaint made no mention of the insurer or the guaranty agreement. Instead, the complaint alleged the transfers were made to the underwriter as a creditor "for or on account of an antecedent debt owed" from the debtor to the underwriter. *Id*. at ¶¶ 11, 15.

On cross motions for summary judgment, the underwriter asserted that the trustee lacked evidence to support the allegations in his complaint. *Id*. at doc. 89-1, pg. 12-13. According to the underwriter, the trustee had shown no grounds on which to conclude the underwriter held a prepetition claim against the debtor and the guaranty made it a mere conduit of the insurer. *Id*. This would have exculpated the underwriter and left the Trustee with no party from which to recover. Facing a meritorious conduit defense, to salvage his action, the trustee changed his theory, arguing the payments were *for the benefit* of the underwriter due to the guaranty agreement despite his previous assertion that the payments were made *to* the underwriter. *Id*. at doc. 88, pg. 13-16; *see also id*. at doc. 115. The underwriter objected to this change of theory for lack of notice in the trustee's complaint. *Id*. at doc. 116, pg. 11-13.

The Bankruptcy Court concluded that the underwriter was a conduit of the insurer and granted summary judgment in the underwriter's favor. *Id*. at doc. 130, ¶ 34. On appeal, the District Court vacated the order granting summary judgment. *Guttman v. Constr. Program Grp.*, No. CIV. JKB-13-385, 2013 WL 3427897, at *7 (D. Md. July 8, 2013).

When the case reached the Fourth Circuit, the underwriter argued that the trustee should have been precluded from changing his legal theory because the complaint failed to provide notice that the underwriter was being pursued as a beneficiary.  Appellant's Brief, *In re Railworks Corp.*, 760 F.3d 398 (4th Cir. 2014) (No. 13-1931), 2013 WL 5176799 at *14.  The Panel disagreed.

The Circuit first observed that it has "long held that a plaintiff is not limited by any one specific legal theory set forth in the complaint."  *Railworks*, 760 F.3d at 403 (citing *New Amsterdam Cas. Co. v. Waller*, 323 F.2d 20, 24 (4th Cir. 1963)).  The Court noted, " 'Rule 8(a)(2) of the Federal Rules of Civil Procedure,' which is made applicable to bankruptcy adversary proceedings by Bankruptcy Rule 7008(a), 'generally requires only a plausible 'short and plain' statement of the plaintiff's claim, not an exposition of his legal argument.' "  *Id*. at 404 (quoting *Skinner v. Switzer*, 562 U.S. 521, 530 (2011)).  Despite the trustee's change in the theory of avoidance, the Court concluded that the trustee had sufficiently pled his claims against the underwriter.  *Id*.

Applying the rationale in *Railworks* to the matter at hand, it would appear that the Trustee is permitted to assert that the Lunsfords were initial transferees.  If a change in the theory of avoidance under Subsection 547(b)(1) from transferee to beneficiary is permitted, reason dictates on that a change his legal theory of recovery under Section 550 from subsequent transferee to initial transferee is permissible as well.  Both are changes in the theory of avoidance, and in fact transferee to beneficiary is a greater change in theory than subsequent to initial transferee.

That said, the Court is troubled by the proposed change.  Introducing the Trustee's new theory post discovery is likely to significantly prejudice the Lunsfords.

The Lunsfords' Section 550(b) defense was simple and required little discovery on their

part.  They needed only to demonstrate the two Section 550(b) elements discussed above.

As noted, the Lunsfords easily meet those criteria.  Now, potentially facing claims they

were initial transferees, the Lunsfords must defend against the litany of elements of a

claim under Section 547, which until now they undoubtedly were unaware would be

necessary.

The Trustee's new theory that the Lunsfords are initial transferees is, at best, a

stretch.  It is undisputed that Greg deposited his check in the Decedent's Estate and it was

honored by his bank.  This meets the bankruptcy definition of a "transfer," 11 U.S.C. §§

101(54)(D), 548(d)(1), so it would appear that the Decedent's Estate was the initial

transferee.

In order to make the Lunsfords initial transferees, the Trustee must nullify this

apparent transfer.  There are only two ways of forcing this square peg into a round hole:

(1) by demonstrating that the Decedent's Estate was merely a "conduit," or (2) by

showing that the Decedent's Estate was Greg's alter ego.

The Decedent's Estate is definitely not a conduit.  As discussed above, a conduit

is an agent who helps to facilitate a transfer but does not have the right to use the property

for its own purposes.[10]  Greg imposed no restrictions on the Decedent's Estate as to what

it could do with the money deposited.  Moreover, a conduit serves another "party who

had a direct business relationship with the debtor."  *Columbia Data Prods.*, 892 F.2d at

28.  The Lunsfords had no business relationship with Greg.  And, a conduit must have

acted in "good faith" as to the transaction.  *In re Harbour*, 845 F.2d 1254, 1259 (4th Cir.

---

[10] Typically conduits are agents like banks and attorneys.

1988) ("Since, however, the initial recipient is asking the court to ignore the literal

meaning of section 550(a)(1) on essentially equitable grounds, this party must have acted

in 'good faith' with respect to the relevant transaction in order to be spared the effects of

this code provision."). The Decedent's Estate could only act through its executor, Greg.

Greg made the allegedly fraudulent conveyance, so his knowledge is imputed to the

Decedent's Estate.

For the Trustee's theory to work, he must demonstrate that the Decedent's Estate

was Greg's alter ego such that his deposit of funds from his checking account into the

Decedent's Estate Account was but Greg moving his money from one pocket into

another.[11]

Frankly, that's a tall order. No such cause has been pled, but one wonders

whether sufficient facts can be pled to meet the *Iqbal* and *Twombly* "plausibility"

standard. As an additional barrier, there is the lurking state law question of whether the

alter ego theory, a legal fiction under North Carolina law that permits piercing the

corporate veil to as between corporations and their principals, *Green v. Freeman*, 367

N.C. 136, 144 (2013), can be employed as against a decedent's estate, a state supervised

legal entity. There are no published cases in North Carolina treating a decedent's estate

as the alter ego of its executor. And finally, there is the question of whether a state law

equitable remedy can alter the Section 550 statutory criteria for "initial" transferee. At

least one bankruptcy court has held that it cannot not. *In re Duckworth*, No. 10-83603,

2012 WL 4434681, at *1 (Bankr. C.D. Ill. Sept. 24, 2012) ("The application of an

equitable remedy is within the court's sound discretion and should not be used where it

---

[11] The Decedent's Estate could not be a "conduit" because Greg was the executor and had
knowledge of all matters surrounding the $202,363.84 transfer.

would work an injustice.  When confronted with an alter ego argument, a bankruptcy

court should consider whether piercing an entity's corporate veil will permit an injustice

to be worked upon those who in good faith dealt with the entity." (citations omitted)).

This Court feels constrained by the *Railworks* decision to permit the Trustee, if he

so desires, to proceed with his theory that the Lunsfords were initial, not subsequent

transferees.  However, it does not encourage him to do so given the long shot nature of

his claims, the cost to the parties of such an undertaking, and the fact that the Lunsfords

were innocent parties uninvolved in Greg's alleged manipulations.

Should the Trustee elect to make the effort, the Trustee must amend his

Complaint to plead this new cause.[12]  Assuming it is even possible to apply an alter ego

theory against a decedent's estate, the Lunsfords have had no notice that would direct

them to conduct discovery on whether Greg and the Decedent's Estate were one and the

same.  If the Trustee's theory holds, and because an initial transferee has no defenses,

whether or not the  $202,363.84 transfer is avoidable will become a make or break issue

to the Lunsfords.  The Lunsfords will need to contest insolvency and other Section 548

elements not required under their Section 550(b) defense.  The defendants, including the

Lunsfords, will therefore be afforded an opportunity to contest any such amendment

under Rule 12 and if it meets muster, to take discovery in defense of the new claim.

Simply allotting the Lunsfords additional time to complete discovery and file

dispositive motions may not adequately mitigate the prejudice caused by the Trustee's

---

[12] The Trustee is advised that he need be mindful that the costs of this fanciful exercise
do not exceed the potential recovery.  Having already conceded away $50,000, the
Trustee would be able to recover at most a proportion of the remaining $50,000 at issue.
That proportion would depend on the method of tracing used to track the funds paid in to
and out of the Decedent's Estate.

sudden shift in legal theory from that which he pled nearly four years ago.  During that time, the Lunsfords have undoubtedly expended significant sums defending an action premised on their being intermediate or mediate transferees.  Should the Trustee choose to amend his complaint, the Court will retain the discretion to determine if they are entitled to an award of fees to be paid by the bankruptcy estate or even *by the trustee's counsel*.  This may include any increased cost occasioned due to the Trustee's belatedly sought amendment, such as the cost of increased discovery, Rule 12 motions, and further related matters for summary judgment.  Additionally, the Court will retain the discretion to consider any motions for sanctions that may arise should the Trustee's amendment prove to be frivolous.

If the Trustee chooses not to amend and his action against the Lunsfords remains a Section 550 subsequent transferee theory, summary judgment should be granted to the Lunsfords recognizing their Section 550(b) defense.

The Trustee is afforded 30 days to amend his complaint.  Thereafter, if not amended, the Lunsfords may tender an order granting summary judgment in their favor on the Sections 548 and 550 counts of the present Amended Complaint.

**IV. The Lunsfords' arguments regarding the state statute of limitations were not properly brought before the Court and will not be considered at this time.**

Finally, in a post hearing brief, the Lunsfords argued for the first time that to the extent the Trustee seeks to recover the aforementioned transfers under state law made applicable by Section 544 of the Bankruptcy Code, his recovery is time barred by N.C.G.S. § 28A-19-3(b)(2).  That provision provides that a claim against a decedent's estate, including a claim against the heirs and devisees of the decedent's estate, that arises

after the death of the decedent is barred unless it is asserted within six months after the

date on which the claim arose.  N.C.G.S. § 28A-19-3(b)(2).

Being a tardy argument, not raised in the original motion or even argued at

hearing, this Court declines to consider the contention at this time.  Should they choose to

do so, the Lunsfords may assert this in a subsequent motion or at trial.


**SO ORDERED**

This Order has been signed                                    United States Bankruptcy Court
electronically. The Judge's
signature and Court's seal
appear at the top of the Order.